Good morning, Your Honors. Alexander Silver on behalf of Defendant Appellant Mr. Wright and I would ask to reserve one minute for rebuttal. I'd like to start off saying this case was kind of framed below to raise the tension between the case of Jefferson and the case of Hunt. That's how from the very beginning of this case we looked at it. However, as you can tell from the appeal, we actually overlooked what was right in front of us, which is that this is not relevant conduct and the court should have ruled based upon 1B1.3. There is obviously the issue of Hunt and Jefferson is of concern, is in tension, and I don't think given the law as it stands right now, this court need to address that issue. But turning to the relevant conduct issue, I want to point out first that Hunt in 2015, the sentencing guidelines amended and clarified Rule 1B1.3 and actually highlighted a concept that was in the application notes, but it brought it to the forefront by adding it to the actual main part of 1B1.3, which was we want to look at the scope of a conspiracy and what did the defendant agree to do and what did the defendant, what was his scope in there? And all the application notes and examples actually serve to highlight that. The government contends we don't go to 3B1.A1B, which is the clause that deals with what happens and how do you deal with a conspiracy. The government says all that's important is that he committed an act which was possession of the unopened box and by mere possession of an open box, we don't go to 1B1.3A1B, we stay at A1 of what he committed. And they point to this court's decision in Salazar and Carranza for that argument that all that's important is that he possessed the box and therefore whatever was in the box, he's responsible for. There's several problems with that argument. The first is that if you look at paragraph eight of the pre-sentence investigation report, the only thing Mr. Wright possessed was .84 grams of methamphetamine. The rest had already been taken out. And this is not an attempt case. This was a charge of possession with intent to distribute an unknown quantity of methamphetamine is what he pled to. Although at the plea, he argued that he didn't know what the substance was. So if you look at Salazar and Carranza, which are importation cases, the act was complete. The minute the truck or the item came through the border, the crime was complete and this court held that it does fall, that falls under A1A. It's an act that was committed and the act that was committed was importation and it's done. And it doesn't matter whether the defendant knew the quantity or the type. But here, if we go down that logic, which we're not suggesting the court does because we believe that's the wrong section, but even if we go down that logic, and that's what the government argues in its brief, the act that it's claiming falls under that section is the act of possession. What he possessed was a box that he had never opened that contained .84 grams of methamphetamine. The only way that we can get to the larger amount in this kind of case is through the next section, which deals with how you deal with conspiracy liability. And in that section, it's very clear, especially after 2015 amendment, that the first part of the test is the scope and the scope is what did the defendant agree to do? And there's no question here, and this is what the district court relied on, that this was rather a unique case. Everyone agreed that Mr. Wright had no idea what was inside that box. In fact, he thought, he actually had an idea. He thought it was marijuana. He agreed to marijuana with a co-conspirator and that's what was supposed to be sent to him. So if you look at A1B, the scope clause, you can punish him only for what he agreed to do. In furtherance of this concern, the conspiracy. And all he agreed to do was bring in marijuana. He can't be held accountable under that section for someone else violating the agreement and packing methamphetamine. So our belief is, number one, that this really does fall under just a simple relevant conduct test that I have to admit we did not raise below. I think if we had, we wouldn't even be here today. Because if you look at the court's comments about the fact that could he have and he would have given him probation. He just felt it was too much of a drop to go from the methamphetamine guideline. So our position is, it's really an A3 type of relevant conduct case, which we think on all three prongs we win, but we only have to win on one. But if you go with Salazar and Carranza, which I think is distinguishable for a number of reasons, all he can be held liable for is what was inside that box for possession. And that's .84 grams. And I did the calculations on that. It ends us right back where we are with our argument that he would have been in probation. The Hunt-Jefferson issue, Your Honor, unless you want me to argue it, I know Your Honor wrote Hunt. Given the case law that's developed since then, Your Honor wrote Hunt, so you're in a better position than I am to know the exact intent of Hunt. What's been happening in the district courts is that they've been trying to cabin Hunt to only applying to attempt cases. And we believe that Hunt actually was an apprendi case. That's what it was. Apprendi case. That's right. It was an apprendi case. Right. And if it's an apprendi case, it has broader ramifications than just attempt cases. But everybody, I can tell you this, down below in the district court. Your Honor, I can't account for what the district court judges do, but it was an apprendi case. I agree. And it arose in the context of apprendi. The whole thing was about apprendi. Right. And we believe that if that's really what it was and not just, oh, this is an attempt case, we're going to put it over here, then there really is a conflict between Jefferson and Hunt that's very viable. We think Hunt is better decided because it goes along with apprendi and all the laws about mens rea, especially the recent Supreme Court case. We weren't dealing with mens rea in Hunt. That's not. That's right. It was the fact of what drug was in play and the amount. Right. But we're extending that argument to the issues of mens rea and how it applies and how the statute should be interpreted. And we think that Hunt is a better decided. And if you look at Judge Fletcher's concurring opinion in Jefferson, where she lays out that she, while she concurs with the conviction, she doesn't concur with the punishment portion that it has to be the mandatory minimum 10. We think that's actually a very logical argument and should be adopted by the court. We know the court's probably hamstrung and we probably have to do en banc if we're going to reach that issue. But we don't think the court needs to go there. This really was and should have been treated as a strict, relevant conduct argument. And if it was done that way, we wouldn't be here. And I believe the court, as it said, would have given Mr. Wright probation. Do you want to say the remainder of your time for rebuttal? One minute. Yes. Thank you. You've got a minute and fifty-six seconds. Fifty-nine. Thank you. Good morning and may it please the court. Mark Wallenstein for the United States. On the first point of error, the relevant conduct argument, Salazar's decisive on this point. Salazar was an inspector at a point of entry in Mexico. He allowed cocaine to come into the country but believed it was marijuana. He didn't drive the cars. There's no evidence he even touched the cars. If he was held accountable for the cocaine that actually came into the country, if that was his own act, then surely Mr. Wright, who actually put hands on the parcel and put it on his moped and drove off with it, is accountable for that act. The rest of the drugs, other than the .86 grams that were actually in the parcel, those come in under 1B1.3A2 because they're part of the same course of conduct. That's why he gets up to the 1.3 kilograms that he admitted on the record were in the parcel. Salazar squarely holds that this is not a case that involves the relevant conduct of a co-conspirator. It squarely involves the relevant conduct of Mr. Wright. And I will note that oral argument today is the first time in this case that the defense has taken the position that Mr. Wright is accountable for only the .86 grams, if that's what he's arguing. Arguments sort of evolve. You have to look at the case and think about it. Just observe that for the record, Your Honor. Understood. And I think with that, I'll move to the Jefferson issue. It's a hot issue, too. So I think it's a Jefferson issue, Your Honor. The defendant Wright was charged with possessing methamphetamine. That's in the information. He pled guilty to possessing methamphetamine, and he admitted on the record under oath that he possessed methamphetamine. That's all that's required under Jefferson in the Soto Zuniga case, and some subsequent unpublished decisions show that Jefferson applies to the 841 statute that's at issue here. And we're done. Case closed. The fact that Mr. Wright believed at the time that he was actually possessing marijuana is something that the district court clearly took into account when it did its sentencing calculation, both through what amounted to be a seven-level minimal conduct adjustment, because he got four plus two, followed by a 17-month downward variance. Mr. Wright was looking at the PSR. His range was seven to nine years, and he got two. So the district judge, this is an example of the sentencing system working exactly as it should. The district judge took into account the fact that he believed it was marijuana, as well as all the other factors about Mr. Wright, that he was employed, that he didn't have criminal history, and imposed a just sentence in this case. And Jefferson and Soto Zuniga control the outcome. What about Hunt? I was hoping you could answer that question. So I think that the parties in their briefing have made clear that the tension recognized between Hunt and Jefferson, by the Sentencing Commission, is genuine. There's genuine tension. And however it's resolved, it's... Well, you know, we made it pretty clear, though, that early on, in an en banc opinion called Buckland, that quantity and the type of drug, where the defendant didn't admit anything, had to be determined. It's like an element of the offense. Yes, Your Honor, and it was here. It was determined. Well, here it was. But in Hunt, it wasn't. He didn't admit to anything. Your Honor, I agree with that. And I guess one possible way, if the court were to attempt to distinguish Hunt, would be to say the colloquy in Hunt was far less clear than the colloquy here. Here we have crisp admissions as to the actual drugs involved and their quantity. And in Hunt, he basically just said, I don't know what it was. Right. And... And we said that I think in the opinion it says that if the judge, if he doesn't admit, then what do you do? You reject his plea and you force him to go to trial. You set the case for trial and he can rethink what he's going to do. I acknowledge that that is a plausible way to distinguish Hunt. And if that's the way this court comes down... Well, I just, you know, I'm just, I'm only one person. I'm not, you know... Well, Your Honor, you're the author of the Hunt decision. So, but I understand, you know, as I recall, I just, it came down at a time when, right after Buckland and where Apprendi was a big deal. And I think it's, I think the outcome with that gloss is understandable, but for what I view as an erroneous reading of the jury instructions and importing an element that didn't exist at the time, as I've written in my brief. Fair enough. Your Honor, do you have any other questions? Thank you. I want to start with saying I think Apprendi's still a big deal. Well, it is. I mean, but, you know, a lot of the issues have been resolved. Right. I want to just respond to two things. First of all, when the government says that the defendant clearly admitted to the methamphetamine, that's not true at all. What the defendant admitted to, it is a guilty plea, is what he had to admit to, which was that what was in the box, which he didn't know, they said was .84. He didn't even know it. Well, how were you going to contest that that was what was in the box, because that's what was in the box. He then admitted that what was taken when the box was received and intercepted by the government had X amount of methamphetamine in it. That was not a fact he was admitting to that he intended to bring in, but this is a possession with intent to distribute case, not an importation case. So we just admitted, well, those are facts that we can't contest. It wasn't I'm admitting that I possess with intent to distribute 1,400 grams of methamphetamine. That's not at all what was going on here, and the court understood it when he took the plea and the district court understood that. So to come in here and say there were clear admissions and this is different from Hunt is not correct. He did exactly what Hunt did, which he said, I'm pleading generically. I'm not admitting anything. I have to admit that there was meth in there because there was, but that's all he admitted to and that's what the charge was, a generic charge. But secondly, I want to address one quick thing the government said about foreseeability, that that's how we get to the rest of the box that he didn't possess. You can't do that. You can't jump from Section A to Section B and pick foreseeability out of Section B. Section A stands by itself, and if you read the last note in Application Note 3, subsection D, the last paragraph, foreseeability is not to be considered under Section A. So you just can't jump to Section B and pick out, oh, well, it was foreseeable that somebody might have stuffed the box with more drugs. You can't do that. Once you go into Section B, you have to do the entire test, and for the government to succeed, they have to satisfy each element. But scope in this case very clearly says what did the defendant agree to do, and there's no doubt this is what was unique about this case. Everybody agreed, and the government agreed, and the court made sure the government agreed. He agreed, when he entered the conspiracy, to accept a package and possess with intent to distribute marijuana. Given that, he cannot be tagged for the methamphetamine under B3. And so when the government says, well, we're just going to jump to foreseeability and grab the rest of the drugs other than the .84, you can't do that. Not under Section A. The government chose the plea here. They chose the information. They could have charged attempt, and then we squarely would be in Hunt. They didn't charge attempt. They said possession with intent to distribute. The only thing he possessed, if you want to go down the Salazar-Caranza argument, is the .84. Thank you. Thank you, counsel. Interesting case. The matter is submitted at this time.
judges: Fisher, Paez, Nguyen